[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 20, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-11916
Non-Argument Calendar

_____

BIA Nos. A97-632-750 & A97-632-751

MIGUEL ANGEL FRANCO ROMERO,
MARIA JOSE FRANCO ARISTIZABAL,
CLAUDIA PATRICIA JUVINAO DUQUE,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(November 20, 2007)**

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Miguel Angel Franco Romero,[1] a native and citizen of Colombia, petitions for review of the decision of the Board of Immigration Appeals affirming the Immigration Judge's order denying his application for asylum and withholding of removal.[2]

Romero was admitted to the United States on or about May 14, 2000 as a nonimmigrant visitor with authorization to remain in the country until November 1, 2000. In late 2003, more than one year after arriving in the United States, Romero filed an application for asylum, withholding of removal, and CAT relief. Romero's application asserted that he feared that the Revolutionary Armed Forces of Columbia (FARC) would kill him or his family upon their return to Columbia on account of his political opinion and membership in a particular social group.

The IJ determined that Romero was statutorily ineligible for asylum based on the untimely filing of his application. Before discussing the merits of the rest of Romero's claims, the IJ found that Romero was "not credible," and then went on to

---

[1] Although Romero's wife, Claudia Patricia Juvinao Duque, also appeals the BIA's decision, her claims are derivative of Romero's. Romero's daughter, Maria Jose Franco Aristizabal, has withdrawn from the application. Accordingly, we will collectively refer to the petitioners as "Romero."

[2] Romero does not raise any argument regarding the denial of his application for relief under the Convention Against Torture in his brief to this Court. Romero has, therefore, abandoned that issue. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (per curiam) ("When an appellant fails to offer argument on an issue, that issue is abandoned.").

conclude "that [Romero's] application does not support a grant of asylum let alone a higher standard of withholding of deportation." Citing the fact that Romero had "never been arrested, detained, tortured, [or] physically mistreated," the IJ determined that Romero failed to establish past persecution and denied withholding of removal.

The BIA adopted and affirmed the IJ's decision with some changes. Specifically, the BIA affirmed the IJ's untimeliness determination and found that Romero had "not shown that an exception would apply to the 1 year filing requirement" because his "assertion that his relatives have experienced recent problems in Colombia is not an indication of changed circumstances, but reflects the same situation upon which he based his claims." The Board did, however, reverse the IJ's adverse credibility determination, but went on to find that even assuming the truth of Romero's account, "he experienced no more than threats; his experiences did not rise to the level of persecution." Without more, the Board additionally concluded that Romero could not establish a well-founded fear of persecution. According to the Board, Romero's "political activity was not shown to be linked to the FARC's . . . interest in him" and he failed to offer any persuasive evidence "that his relative's problems with the FARC would be directly

connected with him, or that the FARC was attempting to persecute the family as a particular social group."

## I.

Romero initially contends that the BIA erred by affirming the IJ's denial of his application for asylum based on his failure to establish extraordinary or changed country circumstances so as to justify an exception to the standard one-year filing deadline for asylum applications. The government responds by arguing that we lack jurisdiction to review the BIA's ruling. We review de novo questions of subject matter jurisdiction. See Brooks v. Ashcroft, 283 F.3d 1268, 1272 (11th Cir. 2002).

In order to apply for asylum, an alien must "demonstrate[] by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). An untimely application may be permitted, however, if the alien "demonstrates . . . either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application." Id. § 1158(a)(2)(D). Pursuant to 8 U.S.C. § 1158(a)(3), "No court shall have jurisdiction to review any determination of the Attorney General" regarding the timeliness of an asylum application. This Court has held that §

4

1158(a)(3) divests us "of jurisdiction to review a decision regarding whether an alien complied with the one-year time limit or established extraordinary circumstances that would excuse his untimely filing." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003); see also Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1217 (11th Cir. 2002) (per curiam) ("Pursuant to 8 U.S.C. § 1158(a)(3), the Attorney General's decision regarding whether an alien complied with the one-year time limit or established extraordinary circumstances, such that the time limit should be waived, is not reviewable by any court.").

Nonetheless, Romero argues that some timeliness determinations are "questions of law" that are properly reviewable under the REAL ID Act. He contends that his appeal qualifies as a reviewable question of law because instead of questioning the BIA's findings of fact, he is challenging the legal conclusion that those facts do not constitute changed or extraordinary circumstances.[3]

---

[3] Romero additionally argues that we have jurisdiction because the IJ's decision raises a constitutional issue of due process by ignoring the agency's own law relating to the exceptions to the one-year filing requirement. Because he failed to specify what law the IJ allegedly ignored and only attacked the IJ's factual determination regarding changed circumstances, however, Romero abandoned that issue on appeal. See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (noting that passing references to an issue are insufficient to raise an issue for appeal, and that such issues are deemed abandoned).

The REAL ID Act was enacted in 2005, and instructs that '[n]othing in any other provision of this Act which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law" raised in a petition for review. REAL ID Act of 2005, Pub. L. No. 109-13, §106(a), 119 Stat. 231, 310. Since that time, however, this Court has confirmed that the changes implemented by the Real ID Act did not alter the effect of § 1158(a)(3) as it relates to the timeliness issue. Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 957 (11th Cir. 2005). In Chacon-Botero, we held that § 1158(a)(3) still divests this Court of jurisdiction to review an untimeliness ruling because the "timeliness of an asylum application is not a constitutional claim or question of law covered by the Real ID Act's changes." Id.

The BIA determined that Romero filed his asylum application more than one year after his arrival in the United States and further concluded that Romero failed to prove changed or extraordinary circumstances justifying that untimely filing. Because we lack jurisdiction to review the BIA's decision that the application was untimely or that changed circumstances did not exist, we dismiss the petition to the extent that it asks us to review the asylum claim.

**II.**

Romero additionally argues that the BIA erred by finding that he failed to

6

establish eligibility for withholding of removal on account of his political opinion and membership in a particular social group. The government contends that Romero is precluded from raising these claims because he failed to exhaust available administrative remedies by not contesting the issue of his eligibility for withholding of removal before the BIA. Alternatively, the government argues that the Board's denial of Romero's request for withholding of removal is supported by substantial evidence in the record.

Under 8 U.S.C. § 1252(d)(1), "A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." We view this exhaustion requirement as jurisdictional and, therefore, "lack jurisdiction to consider claims that have not been raised before the BIA." Sundar v. INS, 328 F.3d 1320, 1323 (11th Cir. 2003); see also Fernandez-Bernal v. Att'y Gen., 257 F.3d 1304, 1317 n.13 (11th Cir. 2001) (determining that where an alien failed to raise an issue before the BIA, we did not have jurisdiction to consider that issue); Asencio v. INS, 37 F.3d 614, 615–16 (11th Cir. 1994) ("[A] court lacks jurisdiction to consider a claim which has not first been presented to the Board."). The purpose of the requirement is to ensure that "the agency has had a full opportunity to consider a petitioner's claims and to allow the BIA to complete a record which is adequate for judicial review." Amaya-Artunduaga v. U.S. Att'y

Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (internal quotation marks and citations omitted).

In Alim v. Gonzales, 446 F.3d 1239 (11th Cir. 2006), we considered what is required of a petitioner in order to properly raise a claim before the BIA and thereby exhaust available administrative remedies. We held in Alim that the petitioner failed to exhaust his administrative remedies with regards to his application for cancellation of removal, but properly raised the issue of his withholding of removal claim under 8 U.S.C. § 1231(b)(3) and the CAT. Id. at 1253–54. In determining that the petitioner did not exhaust administrative remedies relating to the denial of his application for cancellation of removal, we noted that in his brief to the Board, "Mr. Alim never discussed the merits of his application . . . let alone the IJ's basis for denying it." Id. at 1253. We also found it significant that "[n]either his procedural summary of the proceedings before the IJ, nor his prayer for relief, mentioned his application for cancellation of removal." Id.

With regards to his withholding of removal claim, however, we concluded that the petitioner in Alim had exhausted his administrative remedies because his "procedural summary of the case expressly stated that the issues decided by the IJ 'concerned his applications for relief from withholding of removal under [INA]

8

section 241(b)(3)(A) . . . and protection under the Convention Against Torture.'" Id. at 1254.  Disagreeing with the government's characterization of the petitioner's brief as making only passing references to the claim, we noted that his brief "also recounts the IJ's factual findings and legal conclusions" and made an argument that could only have been relevant to the merits of his withholding of removal claim. Id.  Finally, we identified that the petitioner's brief also "formally requests that the BIA withhold removal under the INS and/or CAT, with specific references to the applicable federal statutes."  Id.

After reviewing Romero's brief to the BIA, we conclude that he adequately alerted the Board to the issue of his eligibility for withholding of removal on account of membership in a particular social group, but not on account of his political opinion.  The "Case Summary" portion of Romero's brief stated that the IJ denied his application for asylum, withholding of removal and relief under the CAT, although the brief did not discuss the IJ's specific factual findings and legal basis for denying that relief.  In the prayer for relief, moreover, Romero requested that the BIA "review the evidence in [the] case and grant the respondent political asylum, or, in the alternative, withholding of removal to Colombia."  The argument portion of the brief, however, solely concerned a due process argument made by

9

Romero in which he alleged that the IJ lacked impartiality and subjected him to "a vicious and malevolent cross examination."

Because Romero's brief exclusively recounted his family's troubles with the FARC and only mentioned threats that he received in relation to his family's problems, we find that he failed to properly raise the denial of his withholding of removal claim on account of his political opinion before the BIA. Although Romero's application for asylum stated that he was a sympathizer of and active participant in the Liberal Party, nowhere in his brief to the BIA did Romero even mention his political beliefs. The closest that Romero comes to discussing any of his political connections was when he described his great uncle's involvement in promoting the PLANTE program, which encourages local farmers to cease cultivating illegal crops in Colombia. But nothing in the brief connects his great uncle's conduct as the mayor of a local town to Romero's own political activities. Because he failed to properly raise the issue before the BIA, we lack jurisdiction to review Romero's withholding of removal claim on account of his political opinion even though the BIA did end up reviewing that claim. See Amaya-Artunduaga, 463 F.3d at 1250–51 (holding that because the objectives of the exhaustion doctrine would be frustrated, we lack jurisdiction "over a claim when an alien,

without excuse or exception, fails to exhaust that claim, but the BIA nonetheless considers the underlying issue <u>sua sponte</u>”).

However, we do find that Romero's brief adequately notified the BIA that Romero wished to challenge the denial of his withholding of removal claim on account of membership in a particular social group despite the notable absence of any discussion of the merits of the claim. Like the petitioner in <u>Alim</u>, Romero expressly stated in his procedural summary that the IJ denied his petition for withholding of removal, although Romero did not recount the IJ's specific factual findings or legal conclusions on the merits of that claim. Romero's prayer for relief did, however, formally request that the Board grant him asylum or, in the alternative, withholding of removal. Moreover, the "Case Summary" portion of Romero's brief recounted the problems that his family had encountered in Colombia with the FARC, summarized the basis of his mother's asylum application, and stated that he had testified that he and his family received telephone, mail, and personal threats. These references were relevant to the merits of the denial of his petition for withholding of removal on account of his membership in a particular social group. We therefore conclude that Romero's brief put the BIA on notice that he intended to challenge the denial of his withholding of removal claim on account of his membership in a particular social

11

group.  Romero adequately exhausted his administrative remedies with respect to that claim.

**III.**

Because we have jurisdiction to review Romero's withholding of removal claim on account of membership in a particular social group, we must determine whether substantial evidence supports the BIA's denial of that claim.  When the BIA issues a decision, we review only that decision, "except to the extent the BIA expressly adopts the IJ's decision."  Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (citation omitted).  "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well."  Id. (citation omitted).

"To the extent that the BIA's [or IJ's] decision was based on a legal determination, [our] review is de novo."  D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004).  However, we review any factual determinations under the substantial evidence test, and we must "affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (internal quotation marks and citations omitted).  The substantial evidence test is "highly deferential" and does not permit us to "re-weigh the evidence from scratch."  Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006) (quoting

12

Mazariegos v. U.S. Att'y Gen., 241 F.3d 1320, 1323 (11th Cir. 2001)).  To reverse a finding of fact, we must determine that "the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify reversal."  Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

When an alien makes a withholding of removal claim, he cannot be removed to a country if his life or freedom would be threatened in that country on account of his race, religion, nationality, membership in a particular social group, or political opinion.  8 U.S.C. § 1231(b)(3).  To succeed on a withholding of removal claim, the alien must establish that it is "more likely than not that [he] will be persecuted or tortured upon being returned to [his] country."  Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1232 (11th Cir. 2005) (per curiam).  This standard is more stringent than the "well-founded fear" standard used to review applications for asylum.  Id.  The petitioner must establish a nexus between the persecution and the statutorily-listed factor.  See Forgue, 401 F.3d at 1286 (holding that an alien must show that he will be singled out for persecution on account of" a protected ground in the asylum context).

Once an alien establishes past persecution on account of a protected ground, "it is presumed that his life or freedom would be threatened upon return to his country," subject to rebuttal by the INS.  Mendoza, 327 F.3d at 1287.  If an alien

13

has not shown past persecution, however, he "may still be entitled to withholding of removal if he can demonstrate a future threat to his life or freedom on a protected ground in his country." Id.

While the INA does not define persecution, we have recognized that it "is an 'extreme concept,' requiring 'more than a few isolated incidents of verbal harassment or intimidation,' and that '[m]ere harassment does not amount to persecution.'" Sepulveda, 401 F.3d at 1231 (citation omitted). In Sepulveda, we held that menacing telephone calls and threats to the alien, her family members, and her colleagues did not rise to the level of past persecution. Id. We further determined in Sepulveda that a bombing at the restaurant where the alien worked did not compel a conclusion that the bombing was directed at the petitioner on account of her political activity. Id. Similarly, in Silva, we found no persecution where an alien received death threats in writing and by telephone and had the back window of her car shot out by two men on a motorcycle. Silva, 448 F.3d at 1237.

By contrast, in Ruiz v. Gonzales, 479 F.3d 762 (11th Cir. 2006), we held that an alien was persecuted where "the FARC beat him on two occasions, telephoned threats to him, and held him against his will for 18 days." Id. at 766. Because the petitioner in Ruiz was not only threatened, but was also subjected to

14

multiple beatings and kidnaped, we found that the record compelled the conclusion "that these events cumulatively amount[ed] to past persecution." Id.

In this case, substantial evidence supports the BIA's conclusion that Romero did not suffer past persecution, and nothing in the record compels a conclusion to the contrary. Romero testified that the FARC activity that was specifically directed towards him were threatening telephone calls, written notes, and occasionally in-person verbal encounters. Romero admitted that he was never physically harmed in any way. The verbal threats alone are insufficient to rise to the level of persecution. See Silva, 448 F.3d at 1237; Sepulveda, 401 F.3d at 1231. Nor do the threats compel the conclusion that it is more likely than not that, if he returns to Colombia, Romero will be persecuted. See Sepulveda, 401 F.3d at 1232 (determining that the evidence did not compel a conclusion that the petitioner had a well-founded fear of future persecution based on menacing telephone calls and threats because her "fear is not objectively reasonable"). Accordingly, we deny Romero's petition for review as to his withholding of removal claim on account of membership in a particular social group.

**IV.**

In conclusion, we lack jurisdiction to review the petition for review as to

15

both the asylum claim and the withholding of removal claim on account of political opinion and therefore **DISMISS** the petition insofar as it concerns those claims. We **DENY** the petition for review insofar as it involves the withholding of removal claim on account of membership in a particular social group.

**DISMISSED IN PART AND DENIED IN PART.**